UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                        :
JAYSON SANTANA,
                        Petitioner,              :        12 Civ. 2150 (JSR) (GWG)

        -v.-                                          :
                                                            REPORT AND RECOMMENDATION
UNITED STATES OF AMERICA,                :

                        Respondent.            :

-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Petitioner Jayson Santana seeks a writ of error <u>coram nobis</u> under the All Writs Act, 28

U.S.C. § 1651, to vacate his guilty plea in <u>United States v. Santana</u>, 01 Cr. 320 (JSR).  Santana

alleges that he received ineffective assistance of counsel because his attorney failed to advise

him of the immigration consequences of his guilty plea.  For the following reasons, Santana's

petition should be denied.[1]

I.      <u>BACKGROUND</u>

       Santana was indicted for violations of 21 U.S.C. § 841 and eventually pled guilty.

<u>See</u> Presentence Investigation Report, dated Aug. 6, 2001 (annexed as Ex. A to Gov. Mem.)

("PSR") ¶¶ 1–3.  Prior to his plea allocution, Santana's counsel, Steven Adam Rubin, received

copies of Santana's criminal history record.  <u>See</u> Letter to Petitioner's Prior Counsel and

Enclosed Criminal History Records, dated May 4, 2001 (annexed as Ex. C to Government's

Memorandum of Law in Opposition to Petition for Writ of Error <u>Coram Nobis</u>, filed June 29,

_____

       [1]  Santana also cites 28 U.S.C. § 2241 as a basis for relief.  <u>See</u> Petition for Writ of Error
Coram Nobis in 01–CR–00320 (JSR), filed Mar. 23, 2012 (Docket # 1) ("Pet."), at 1.  Section
2241, however, applies only to an individual who is in custody, <u>see</u> <u>Ahn v. United States</u>, 2003
WL 21910855, at *2 (S.D.N.Y. Aug. 8, 2003) (quoting <u>Maleng v. Cook</u>, 490 U.S. 488, 490
(1989)), <u>aff'd</u>, 96 F. App'x 43 (2d Cir. 2004), and Santana is not currently in custody.

2012 (Docket # 7) ("Gov. Mem.")).  Included in this record was a statement that "I.N.S. records indicate that this subject is legally residing in the United States as a permanent resident and may live and work in the U.S.  If this person has been convicted for a felony offense, this person may be amenable to removal proceedings for violations of the Immigration Act." Id. at 000003.  On May 23, 2001, Santana pled guilty to possessing with intent to distribute three grams of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(c), pursuant to a plea agreement with the Government.  See Transcript of Plea Proceedings before the Hon. Jed S. Rakoff, dated May 23, 2001 (annexed as Ex. D to Gov. Mem.) ("Plea Tr.") 6, 11–12, 15–16.  The Government provided Santana with a letter stating the Government's view on the prison sentence called for by the Sentencing Guidelines.  Letter from Miriam Baer to Steven Rubin, Esq., dated May 3, 2001 (annexed as Ex. E to Gov. Mem.); Plea Tr. 11–14.

Before his sentencing hearing, Santana met with the Probation Department.  See PSR. During this interview, Santana told the probation officer that "he now faces deportation and separation from his paramour and their two young children." Id. ¶ 17.  On October 11, 2001, Judge Rakoff sentenced Santana to three years' probation, with six months of that time to be served in home confinement.  See Transcript of Sentencing Proceedings before the Hon. Jed S. Rakoff, dated Oct. 11, 2001 (annexed as Ex. F to Gov. Mem.) 5–7.  Judge Rakoff listed the special conditions of probation, which included a requirement that Santana "comply with the directives of the Immigration and Naturalization Service and the immigration laws." Id. at 6. Santana did not appeal his conviction or sentence, and never petitioned for habeas corpus relief. Gov. Mem. at 8.

On February 14, 2006, Santana filed an application for citizenship.  See Immigration File Documents (annexed as Ex. G to Gov. Mem.).  Santana sought derivative citizenship pursuant to

8 U.S.C. § 1433, based on the theory that he had acquired citizenship through his father, who obtained citizenship in 1982 when Santana was six years old.  Id. at 2–3.  This application was denied on August 22, 2006, because Santana was not in the legal custody of his father after his parents' divorce.  Id.  Santana appealed this ruling on October 6, 2006, id. at 1, and his appeal was denied on May 21, 2008, id. at 4–7.  These rulings contain no mention of Santana's felony drug conviction.  Since the denial of Santana's appeal, no action has been taken in relation to Santana's immigration status.  Gov. Mem. at 8.

On March 23, 2012, Santana filed the instant petition for a writ of error coram nobis.[2]

II.     APPLICABLE LAW

A.     Law Governing Writs of Error _Coram Nobis_

The writ of error coram nobis is "an ancient common-law remedy designed to correct errors of fact."  United States v. Denedo, 556 U.S. 904, 910 (2009) (internal quotations omitted).  It is a remedy "of last resort" limited to "petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."  Fleming v. United States, 146 F.3d 88, 89–90 (2d Cir. 1998).  Federal courts may grant a writ of error coram nobis by the authority contained in the All Writs Act, 28 U.S.C. § 1651.[3]  United States v. Morgan, 346 U.S. 502, 507–12 (1954).  As the Supreme Court has noted, the writ

was traditionally available only to bring before the court factual errors "material

---

[2]  See Pet.; see also Gov. Mem; Petitioner's Reply in Support of his Petition for Writ of Error Coram Nobis, filed Aug. 21, 2012 (Docket # 11) ("Pet. Reply").

[3]  The All Writs Act provides: "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

to the validity and regularity of the legal proceeding itself," such as the defendant's being under age or having died before the verdict. See United States v. Mayer, 235 U.S. 55, 67–68 (1914). Moreover, "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Penn. Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43 (1985). As we noted a few years after enactment of the Federal Rules of Criminal Procedure, "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis ] would be necessary or appropriate." United States v. Smith, 331 U.S. 469, 475 n.4 (1947).

Carlisle v. United States, 517 U.S. 416, 429 (2006).

The Second Circuit has held that the writ is available where a petitioner shows that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000) (quoting Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998)) (internal quotation marks omitted), cert. denied, 531 U.S. 879 (2000), 536 U.S. 961 (2002). "The proceedings leading to the petitioner's conviction are presumed to be correct, and the burden rests on the accused to show otherwise." Foont v. United States, 93 F.3d 76, 78–79 (2d Cir. 1996) (internal quotations and citations omitted). The scope of entitlement to the relief is quite narrow; the Second Circuit has held that relief "is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." Mandanici, 205 F.3d at 524 (quoting Foont, 93 F.3d at 78); see also Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992) (stating that a writ of error coram nobis should be granted "only where extraordinary circumstances are present").

A court may deny a coram nobis petition on the grounds of delay alone. See Foont, 93 F.3d at 79–80. However, "'the time for filing a petition is not subject to a specific statute of

limitations' . . . [and the court] must decide the issue in light of the circumstances of the individual case." Id. at 79 (quoting Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994)).

       B.     Law Governing Ineffective Assistance of Counsel

     "In order to prove ineffective assistance, [a petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness'; and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)); accord United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010); see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial."). In evaluating the first prong — whether counsel's performance fell below an objective standard of reasonableness — "'[j]udicial scrutiny . . . must be highly deferential,'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Bell v. Cone, 535 U.S. 685, 698 (2002) (alteration in original) (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted); see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption of competence).

     To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247–48 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007). With respect to the second prong, the Second Circuit generally "requires some objective evidence other than defendant's assertions to establish

prejudice." Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380–81 (2d Cir. 1998) (per curiam)).  Courts evaluating an ineffective assistance of counsel claim need not address both prongs of the analysis.  See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

When a petitioner seeks relief on the basis of ineffective assistance of counsel with respect to a guilty plea, the petitioner must show that "a reasonable probability [exists] that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Premo v. Moore, 131 S. Ct. 733, 743 (2011) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). A petitioner who has pled guilty "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).  As one case has noted, "[t]his inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to plea[d]." Matos v. United States, 2012 WL 569360, at *3 (S.D.N.Y. Feb. 16, 2012).

III.   DISCUSSION

Santana argues that he was denied the effective assistance of counsel because his attorney did not advise him that he would face adverse immigration consequences from his guilty plea. Pet. at 1–2.  He seeks coram nobis relief, arguing that the possibility of deportation constitutes compelling circumstances and his petition was filed "with reasonable promptness" after he became aware of his potential ineffective assistance claim under the rule announced in Padilla, 130 S. Ct. at 1483, which held that defense counsel's failure to inform a non-citizen client that a

6

guilty plea would result in his deportation amounted to ineffective assistance of counsel.  Reply at 6–7.

We need not consider the availability of <u>coram nobis</u> relief or evaluate the merits of Santana's claim that his attorney failed to advise him of the adverse immigration consequences of his guilty plea.  This is because Santana cannot show that his counsel's representation constituted ineffective assistance in light of the Supreme Court's recent decision in <u>Chaidez v. United States</u>, 2013 WL 610201 (U.S. Feb. 20, 2013).  <u>Chaidez</u> held that the rule announced in <u>Padilla</u> does not have retroactive effect.  <u>See id.</u> at *10.  Santana's claim in this petition hinges almost entirely on his argument that the rule in <u>Padilla</u> applies retroactively.  <u>See</u> Pet. at 1–2; Pet. Reply at 2–17.  Accordingly, the petition fails due to the inapplicability of <u>Padilla</u> to Santana's claims.

Santana includes in his petition a brief argument that his counsel improperly failed to negotiate a plea deal that would have avoided the immigration consequences of a conviction.  <u>See</u> Pet. at 1–2 (defense counsel "did not attempt to negotiate a plea that would have eliminated or substantially reduced the risk of adverse immigration consequences"); Reply at 13.  But Santana provides no evidence whatsoever — other than speculation — that such a deal was or would have been available to him.  Moreover, this aspect of his claim cannot properly be characterized as pointing to an "error[] of the most fundamental character" in his plea proceedings that has "rendered the proceeding itself irregular and invalid."  <u>Mandanici</u>, 205 F.3d at 524 (internal quotation marks and citation omitted).  Finally, any claim regarding the failure to obtain a better plea deal is untimely.  Such a claim was available to Santana at the time of his original conviction because he knew then that this conviction could result in his deportation.  <u>See</u> PSR ¶ 17.  His petition was not filed until more than 10 years later, however.  Santana has

"failed to demonstrate sound reasons for his delay in seeking relief." Foont, 93 F.3d at 80

(upholding dismissal for delay of five years between plea and filing of coram nobis petition).

IV.     CONCLUSION

For the foregoing reasons, the petition should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Jed S. Rakoff, and to the undersigned, at 500 Pearl Street,

New York, New York 10007.  Any request for an extension of time to file objections must be

directed to Judge Rakoff.  If a party fails to file timely objections, that party will not be

permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v.

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: February 28, 2013
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge